# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
June 15, 2012
Lyle W. Cayce
Clerk

No. 11-10719

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

SHAWN DANIEL SERFASS,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and WIENER and GRAVES,[*] Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Shawn Daniel Serfass pleaded guilty to possessing methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The district court applied a two-level sentencing enhancement under United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(b)(5)[1] based on the government's proof that the offense involved the importation of methamphetamine. The court did so despite Serfass's insistence that the enhancement is inapplicable because he did not know that the

---

[*] Judge Graves concurs in the judgment only.

[1] Before the 2010 amendments to the Guidelines, this enhancement was found at § 2D1.1(b)(4).

methamphetamine he possessed was imported. We affirm the sentence and hold that the enhancement under § 2D1.1(b)(5) applies irrespective of whether the defendant knew that the possessed methamphetamine had been unlawfully imported.

## I. Facts & Proceedings

Serfass was arrested in Fort Worth, Texas after a search of his car revealed a bag containing methamphetamine. In a proffer interview, Serfass admitted that he bought methamphetamine from a named individual on approximately 24 occasions, purchasing two to three ounces each time, and that he sold this methamphetamine to three other persons. Serfass pleaded guilty to possessing methamphetamine with intent to distribute, a violation of 21 U.S.C. § 841(a)(1). Over Serfass's objection at sentencing, the district court applied a two-level enhancement under U.S.S.G. § 2D1.1(b)(5). The district court calculated a Guidelines range of 151 to 188 months of imprisonment and sentenced Serfass to 160 months of imprisonment and three years of supervised release. Serfass timely appealed his sentence.

## II. Standard of Review

We review the district court's interpretation of the Sentencing Guidelines *de novo*, and review the district court's factual findings for clear error.[2] "There is no clear error if the district court's finding is plausible in light of the record as a whole."[3] A finding of fact is clearly erroneous only if, after reviewing all the

---

[2] *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

[3] *Id.* (quoting *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008)).

evidence, we are left with "the definite and firm conviction that a mistake has been committed."[4]

### III. Interpretation of Sentencing Guidelines

Serfass contends that the two-level sentencing enhancement provided in U.S.S.G. § 2D1.1(b)(5) applies only if the defendant knew that the methamphetamine he possessed was unlawfully imported. That guideline authorizes a two-level increase if:

> the offense involved the *importation* of amphetamine or methamphetamine *or the manufacture* of amphetamine or methamphetamine *from listed chemicals that the defendant knew were imported unlawfully* . . . .[5]

We have not previously ruled whether the qualification, "that the defendant knew were imported unlawfully," in this guideline enhancer applies only to "the manufacture of amphetamine or methamphetamine from listed chemicals," or if it also applies to "the importation of amphetamine or methamphetamine."[6] Serfass insists that knowledge of unlawful importation is required for the finished product as well as for the ingredients: He would have

---

[4] *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) (quoting *United States v. Castillo*, 430 F.3d 230, 238 (5th Cir. 2005)).

[5] Emphasis added.

[6] In previous cases, we have declined to reach this question, holding that even if knowledge of importation of methamphetamine is required for the enhancement to apply, the defendants had such knowledge in those cases. *See United States v. Rodriguez*, 666 F.3d 944, 947 (5th Cir. 2012); *United States v. Vasquez-Munoz*, 236 Fed.Appx. 989, 990 (5th Cir. 2007) (unpublished); *United States v. Rodriguez-Monge*, 218 Fed.Appx. 352, 353 (5th Cir. 2007) (unpublished). The Tenth Circuit has indicated in dicta, however, that the guideline "appears to impose a scienter requirement only when 'the offense involved . . . the manufacture of . . . methamphetamine from listed chemicals that the defendant knew were imported unlawfully.' When the offense is the importation of methamphetamine, the Guideline is silent regarding knowledge of the drug's foreign origination." *United States v. Beltran-Aguilar*, 412 Fed.Appx. 171, 175 n.2 (10th Cir. 2011) (unpublished) (not reaching issue because defendant had knowledge that methamphetamine was imported).

3

us read the guideline as providing for an enhancement for the finished products only if "the defendant knew [they] were imported unlawfully" to the same extent that it requires knowledge of the unlawful importation of the listed ingredients. The government, by contrast, maintains that the phrase, "that the defendant knew were imported unlawfully," applies only when the amphetamine or methamphetamine was manufactured from the listed chemicals, but that the enhancement for an offense involving "the importation of amphetamine or methamphetamine"–the finished product–has no scienter requirement.

In interpreting the Sentencing Guidelines, we apply the ordinary rules of statutory construction.[7] When the language of the guideline is unambiguous, the plain meaning of that language is controlling unless it creates an absurd result.[8] Only if that language is ambiguous does the rule of lenity apply in the defendant's favor.[9]

We conclude that the plain language of § 2D1.1(b)(5) unambiguously limits the qualification, "that the defendant knew were imported unlawfully," to such contraband that was manufactured from one or more of the listed chemicals; it does not apply to "the importation of amphetamine or methamphetamine," i.e., the end products of such manufacturing. We reach this conclusion by applying the basic rules of English grammar.[10]

In constructing the phrase, "that the defendant knew were imported unlawfully," the drafters of the Guidelines employed the plural verb, "were." That plural verb matches the plural noun, "chemicals." The enhancement

---

[7] *United States v. Rabanal*, 508 F.3d 741, 743 (5th Cir. 2007).

[8] *Id.*

[9] *United States v. Bustillos-Pena*, 612 F.3d 863, 868-69 (5th Cir. 2010).

[10] *See Flores–Figueroa v. United States*, 556 U.S. 646, 650 (2009) (applying "ordinary English grammar" to interpret scienter requirement in criminal statute).

obviously applies when the offense involves "the manufacture of amphetamine or methamphetamine from listed *chemicals* that the defendant knew *were* imported unlawfully." By contrast, however, there is no other plural noun in the subject guideline to which the verb "were" could apply. In particular, that plural verb cannot apply to the sentence's disjunctive subject, "amphetamine or methamphetamine," because—according to the rules of grammar—"[i]f the subject consists of two or more *singular* words that are connected by *or* . . . the subject is singular and requires a singular verb."[11] Although they are of indefinite quantity, the nouns "amphetamine" and "methamphetamine" are singular, just as, for example, are the words "sugar" and "flour." If, hypothetically, the clause had been drafted to read "amphetamine or methamphetamine *were* imported," it would not have been grammatically correct. Simply put, then, the actual phrase, "that the defendant knew were imported unlawfully," cannot apply to "the importation of amphetamine or methamphetamine."

In addition to being grammatically flawed, Serfass's proffered reading would render the language of § 2D1.1(b)(5) unnecessarily repetitive. Under his interpretation, the guideline would apply to an offense involving "the *importation* of amphetamine or methamphetamine . . . that the defendant knew [was] *imported* unlawfully[.]" This redundant combination of "importation" and "imported" is not only awkward; it is almost certainly not what the Sentencing Commission intended.

As we noted more than two decades ago, "[t]he guidelines drafters have been explicit when they wished to import a *mens rea* requirement."[12] Here, the drafters expressly included a knowledge element for an offense involving the

---

[11] GREGG REFERENCE MANUAL: A MANUAL OF STYLE, GRAMMAR, USAGE, AND FORMATTING 297 (William A. Sabin ed., 11th ed., 2011) (emphasis in original).

[12] *United States v. Singleton*, 946 F.2d 23, 25 (5th Cir. 1991).

importation of the raw materials, i.e. the listed chemicals, used to manufacture amphetamine or methamphetamine. The drafters did not, however, include such a scienter requirement for the importation of the end products, i.e., amphetamine or methamphetamine. The inclusion of a knowledge requirement in one portion of the guideline confirms that its omission from another portion of the same guideline was intentional.[13] Thus, the § 2D1.1(b)(5) sentencing enhancement applies if "the offense involved the importation of amphetamine or methamphetamine" regardless of whether the defendant had knowledge of that importation.

Moreover, this interpretation does not lead to absurd results. We have indicated that "exposing a drug trafficker to liability for the full consequences, both expected and unexpected, of his own unlawful behavior" is a rational deterrent to criminal activity.[14] Thus, it is not absurd to impose an enhancement when an offense involves the importation of amphetamine or methamphetamine, even if the defendant was unaware of that importation. On the other hand, if the defendant possessed amphetamine or methamphetamine that was manufactured domestically using unlawfully imported chemicals, the requirement of knowledge of such importation makes sense.

True, it is argued that the Sentencing Commission would have had no reason to treat offenses involving the importation of methamphetamine more harshly—by not requiring knowledge of such importation—than offenses involving the manufacture of methamphetamine from imported precursor chemicals like pseudoephedrine. The unlawful importation of already manufactured

---

[13] See *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) ("*Expressio unius est exclusio alterius.*").

[14] *United States v. Valencia-Gonzales*, 172 F.3d 344, 346 (5th Cir. 1999) (punishing defendant according to the penalties associated with the drug he was actually carrying, rather than the drug he thought he was carrying, did not violate due process) (quoting *United States v. Strange*, 102 F.3d 356, 361 (8th Cir. 1996)).

methamphetamine, however, may well be more problematic than the unlawful importation of precursor chemicals. Indeed, the mere possession of those precursor chemicals is not unlawful unless and until they are turned into methamphetamine.

In back-tracing a defendant's responsibility under § 2D1.1(b)(5) for the route that the methamphetamine he possesses traveled, even without his knowledge, his responsibility might logically begin at the point at which the precursor chemicals are actually manufactured into methamphetamine. Thus, a defendant who possesses methamphetamine that had itself been unlawfully imported is subject to the enhancement, whether or not he knew of that importation, but a defendant who possesses domestic methamphetamine is subject to the enhancement only if he knew that the chemicals from which it was made were unlawfully imported. Whether such a distinction should make a difference might be subject to debate, but it is not absurd—and the plain language of the guideline controls when it (1) is not ambiguous and (2) produces a result that is not absurd.

Neither does the imposition of a sentencing enhancement under § 2D1.1(b)(5) without requiring knowledge of importation violate due process. Even though some strict liability *crimes* have been struck down on due process grounds,[15] we have held that strict liability *sentencing enhancements* do not violate due process: Such enhancements "do[] not create a crime where one otherwise would not exist" and are consistent with a court's traditional power to consider evidence at sentencing even if that evidence would not have been

---

[15] *See, e.g., Lambert v. California*, 355 U.S. 225 (1957) (felon registration ordinance was unconstitutional when applied to person who had no knowledge of the requirement); *United States v. Anderson*, 885 F.2d 1248 (5th Cir. 1989) (defendant could not be convicted of violation of National Firearms Act without knowing that the guns in question were firearms under that statute).

admissible during the guilt-innocence phase of a trial.[16] Thus, applying the sentencing enhancement that is authorized by § 2D1.1(b)(5) when "the offense involved the importation of . . . methamphetamine"–whether or not the defendant knew that the methamphetamine was imported–does not violate due process.[17] And, because § 2D1.1(b)(5) applies regardless of whether Serfass knew that the methamphetamine he possessed was imported, we need not, and therefore do not, address his assertion that he had no such knowledge.

### IV. Importation of Methamphetamine

Finally, Serfass contends that there is not sufficient evidence to prove that the methamphetamine he possessed was in fact imported. The government must prove the facts underlying a sentencing enhancement by a preponderance of the evidence.[18] At Serfass's sentencing, Drug Enforcement Administration Task Force Officer Kevin Brown testified that Serfass obtained the methamphetamine from an individual, and Officer Brown identified that person by name. Indeed, Serfass admitted in a proffer interview that he obtained the methamphetamine from that individual. Officer Brown further testified that the same individual stated in a proffer interview that his source of supply was another individual, one Fernando Lopez, who brought the methamphetamine to him from Mexico. The district

---

[16] *Singleton*, 946 F.2d at 26. Serfass contends that *Singleton*, which concerned the enhancement under U.S.S.G. § 2K2.1(b)(4) for an offense involving a stolen firearm, is inapposite because, in light of registration requirements, it is easier to determine whether a firearm was stolen than to determine whether drugs were imported. There is, however, no due process requirement that the facts underlying a sentencing enhancement be easy to determine.

[17] Serfass does not raise, and we therefore do not address, an issue raised by the defendant in *United States v. Rodriguez*, 666 F.3d 944, 946 (5th Cir. 2012), viz., the extent to which possession of imported methamphetamine constitutes an offense that "*involved* the importation of . . . methamphetamine" for purposes of § 2D1.1(b)(5).

[18] *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011).

court did not clearly err in finding that the methamphetamine involved in this case was unlawfully imported.

## V. Conclusion

We hold today that the two-level sentencing enhancement of U.S.S.G. § 2D1.1(b)(5) applies when "the offense involved the importation of . . . methamphetamine," even if the defendant did not know that the methamphetamine was imported. As the district court did not clearly err in finding that the methamphetamine possessed by Serfass was in fact imported, we affirm that court's enhancement of Serfass's sentence on the authority of § 2D1.1(b)(5).

AFFIRMED.